STATE, Respondent, v. GOULD, Appellant.

*No. State 6. Submitted November 30, 1972.—Decided January 3, 1973.*
(Also reported in 202 N. W. 2d 903.)

For the appellant the cause was submitted on the brief of *Konnak, Constantine & Krohn* of Racine.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Richard J. Boyd,* assistant attorney general.

HALLOWS, C. J.  We do not find the difficulty in the wording of sec. 940.22, Stats.,[1] which Gould does.  The

[1] "940.22 **Aggravated battery.**  Whoever intentionally causes great bodily harm to another by an act done with intent to cause bodily harm to that person or another may be fined not more than $2,500 or imprisoned not more than 5 years or both."

legislature created the crime of "aggravated battery" by enactment of ch. 696, sec. 1, Laws of 1955, in the following language, "Whoever intentionally causes great bodily harm to another . . . ." This crime contained three elements: The intention to cause great bodily harm, the causation by some act, and the degree of harm suffered by someone other than the actor. The statute did not embrace the situation involving what is known as a "transferred intent," where an actor intends to harm A but his acts harm B, whom he did not intend to harm. In 1961 the legislature amended this section by adding the language "by an act done with intent to cause bodily harm to that person or another." Laws of 1961, ch. 48. By this language, an actor committed the crime if he intended to harm A but A escaped harm and B was injured. Intention and harm need not center in the same person.

Gould argues the language which was added in 1961 requires the intent to cause only bodily harm and that requirement is inconsistent with the first part of the sentence which requires the intention to cause great bodily harm.[2] A legislature may create a crime which requires no specific intent or the intent to harm one person although the injury is to another. While it would be permissible for the legislature to create a crime which requires an intent to cause only a lesser degree of harm than that suffered, we do not think the legislature in-

---

[2] "939.22 **Words and phrases defined.** In the criminal code, the following words and phrases have the designated meanings unless the context of a specific section manifestly requires a different construction: . . .

"(4) 'Bodily harm' means physical pain or injury, illness, or any impairment of physical condition. . .

"(14) 'Great bodily harm' means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury."

tended to do so by its 1961 amendment. Nor do we believe the legislature intended inconsistent intents, *i.e.*, one when the actor injures the person he intended and a lesser intent when the actor injures a person he did not intend to injure although intending to injure another person. The object and purpose of the legislature by the use of the language in the 1961 amendment was to require the intent to do great bodily harm to some person. The legislature was not concerned with intent in relation to the degree of harm but with intent in relation to the victim. Consequently, the term "intent to cause bodily harm" as used in sec. 940.22, Stats., must be read to mean the intent to do great bodily harm because the governing first part of the sentence requires the specific intent to do that degree of harm [3] and the two phrases must be read together and harmonized if reasonable.

Prior cases construing this section have not dealt with this problem. In *State v. Bronston* (1959), 7 Wis. 2d 627, 97 N. W. 2d 504, modified, rehearing denied, 98 N. W. 2d 468, this court pointed out that aggravated battery as a separate crime was unknown to the common law and was created by the legislature to deal with the degree of injury actually suffered and not with the potentialities of the act which caused the bodily harm. Cases like *Irby v. State* (1971), 49 Wis. 2d 612, 182 N. W. 2d 251; *State ex rel. Hanna v. Blessinger* (1971), 52 Wis. 2d 448, 190 N. W. 2d 199; and *Creighbaum v. State* (1967), 35 Wis. 2d 17, 150 N. W. 2d 494, do not reach this problem. The statute would have been clear and unambiguous if the legislature had inserted the word "great" before

[3] "939.23 Criminal intent. . .

"(3) 'Intentionally' means that the actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result. In addition, except as provided in sub. (6), the actor must have knowledge of those facts which are necessary to make his conduct criminal and which are set forth after the word 'intentionally.' "

"bodily harm" in the 1961 amendment and had omitted the word "intentionally" before the word "causes." If the legislature had done this, the language would have paralleled the language creating the crime of battery in sec. 940.20, Stats.[4] But there is no prescribed formula for the legislature to use in creating a crime.

Where there are conflicting provisions of the statute, they are to be construed so as to harmonize, thereby giving effect to the leading idea behind the statute. *Pella Farmers Mut. Ins. Co. v. Hartland Richmond Town Ins. Co.* (1965), 26 Wis. 2d 29, 132 N. W. 2d 225; *State v. Berres* (1955), 270 Wis. 103, 70 N. W. 2d 197; *State v. Hackbarth* (1938), 228 Wis. 108, 279 N. W. 687. Absurd results or interpretations are to be avoided. *Wisconsin Valley Improvement Co. v. Public Service Comm.* (1960), 9 Wis. 2d 606, 615, 101 N. W. 2d 798; *State v. Surma* (1953), 263 Wis. 388, 397, 57 N. W. 2d 370. The court may insert or reject words necessary or reasonably inferable. *Foster v. Sawyer County* (1928), 197 Wis. 218, 221 N. W. 768; *Neacy v. Supervisors of Milwaukee County* (1910), 144 Wis. 210, 128 N. W. 1063; *Nichols v. Halliday* (1871), 27 Wis. 406. Applying these rules to sec. 940.22, Stats., we hold the word "great" should be inserted before the second "bodily harm" therein as reasonably inferable and to avoid conflicting provisions and an absurd result.

We think the evidence sustains the conviction for aggravated battery. The intent was proved by circumstantial evidence, which is generally the only way intent can be proved. The basic facts are persuasive. While in the custody of his father between the period of February 2 and March 19, 1971, little Anthony received

---

[4] "940.20 **Battery.** Whoever causes bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed may be fined not more than $200 or imprisoned not more than 6 months or both."

serious injuries which can be summarized as many black and blue areas on the body but particularly as a serious injury to the child's intestines which were torn from their attachment to the internal cavity of the body, known as the mesentery. A doctor testified the child was probably crying at the time of injury and was the victim of a severe, forceful blow to the abdomen. The severity of the blow was evidenced by "considerable contusion, hemorrhage, damage to muscle, and damage to the bowel." Several doctors testified to the same effect. The other testimony was by exclusion: Neither the grandparents nor the mother had struck the child while he was in their presence.

The evidence is sufficient to prove the great bodily harm and its causation by a blow; but Gould argues there is not sufficient evidence to prove the third element of the crime—his intent to cause such harm. We stated the test in *Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183, as ". . . the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree or certitude which the law defines as 'beyond a reasonable doubt.' " *See also: State v. Cassel* (1970), 48 Wis. 2d 619, 180 N. W. 2d 607. Although Gould may not have actually intended the particular consequences of rupturing young Anthony's intestines or causing their separation from the mesentery, such a specific intent is unnecessary—all that is required is the intent to do a great bodily harm. A person need not foresee or intend the specific consequences of his act in order to possess the requisite criminal intent. *State ex rel. Schulter v. Roraff* (1968), 39 Wis. 2d 342, 355, 159 N. W. 2d 25, certiorari denied, 393 U. S. 1066, 89 Sup. Ct. 716, 21 L. Ed. 2d 709. In addition, an accused is presumed to intend the natural and probable consequences of his acts voluntarily and knowingly performed. This

presumption applies to the degree of harm. *State v. Schenk* (1972), 53 Wis. 2d 327, 332, 193 N. W. 2d 26. *See also: State v. Carlson* (1958), 5 Wis. 2d 595, 604, 93 N. W. 2d 354. Of course, since the presumption is a working tool, evidence of a contrary intent may be introduced to rebut the presumption. *Gelhaar v. State* (1969), 41 Wis. 2d 230, 163 N. W. 2d 609, certiorari denied, 399 U. S. 929, 90 Sup. Ct. 2250, 26 L. Ed. 2d 797; *State v. Vinson* (1955), 269 Wis. 305, 68 N. W. 2d 712, rehearing denied, 70 N. W. 2d 1. In this case, however, no evidence was put in on behalf of Gould to rebut the presumption; therefore, the jury had a right to accept it and be convinced by all the evidence of Gould's guilt beyond a reasonable doubt.

In his final argument, Gould contends the presumption can be used only when the means employed to accomplish the harm are illegal. We find no merit in this contention that the presumption arises only in such limited situations. The presumption is based upon moral certitude, *i.e.,* the customary ways, actions, and intentions of mankind in given circumstances. Thus a person is presumed to intend the natural and probable consequences of his acts voluntarily and knowingly performed, whether they are of a criminal nature or not. The criminality of the act has nothing to do with the validity of the presumption, the basis upon which it rests, or its application. We find nothing in *State v. Vinson, supra,* or in *State v. McCarter* (1967), 36 Wis. 2d 608, 153 N. W. 2d 527, to the contrary because of their reference to unlawful acts.

We point out that in instructing the jury, the trial court used substantially the instruction contained in Wis J I—Criminal, 1240, for aggravated battery, which recognizes the presumption. However, in the second last paragraph of this instruction, reference is made to a purpose to cause merely bodily harm. This no doubt is an oversight and should be corrected.

*By the Court.*—Judgment affirmed.