Kathleen M. HAESSLY, Plaintiff-Appellant,†

v.

GERMANTOWN MUTUAL INSURANCE COMPANY, Defendant-Respondent,

Lee F. KLEINHANS, Defendant.

Court of Appeals

*No. 96–3238. Submitted on briefs July 22, 1997.—Decided August 27, 1997.*

(Also reported in 569 N.W.2d 804.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Anthony O'Malley* of *Zacherl, O'Malley & Endejan, S.C.* of Fond du Lac.

On behalf of the defendant-respondent, the cause was submitted on the brief of *H. Ben Levy* of *Levy & Levy, S.C.* of Cedarburg.

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J. Kathleen M. Haessly appeals from the trial court's grant of summary judgment to Germantown Mutual Insurance Company, finding that there was no coverage for injuries she sustained as a result of the actions of Germantown's insured, Lee F. Kleinhans. Because we conclude that the doctrine of fortuitousness and public policy militate against coverage for any of Kleinhans' conduct, we affirm.

Haessly, who was living with Kleinhans at the time, was brutally beaten by him and suffered head injuries, a brain contusion, amnesia and other temporary and permanent physical and mental injuries. She was unable to seek help for herself, and although Kleinhans was in the house with Haessly and was aware of her condition, he delayed seeking treatment for her for five days.[1]

At the time of the incident, Kleinhans had a home-owner's policy issued by Germantown. Haessly brought a personal injury action alleging that she sustained severe and permanent injuries as a result of Kleinhans intentionally striking her and negligently failing to come to her aid. While she concedes that the policy "probably" does not provide coverage for the injuries that were the result of the intentional battery, she con-

---

[1] Kleinhans was tried and convicted of the crime of intentional battery for this conduct.

tends that Kleinhans' failure to render aid to her in the ensuing five days was a separate act of negligence. Germantown moved to intervene in the lawsuit and brought a motion for summary judgment on the issue of coverage, arguing that its policy excluded coverage for any injuries arising from Kleinhans' intentional acts.

Haessly nonetheless argues that as a result of the battery inflicted upon her, a separate and distinct duty arose to render aid and that Kleinhans' failure to do so enhanced her injuries. She contends that the Germantown policy should cover these additional injuries and that Germantown's motion for summary judgment should have been denied, affording her a trial on the merits. The trial court concluded that "the course of conduct of [Kleinhans] . . . is one continuum. It's all inseparable." The trial court held that the policy did not afford coverage for Kleinhans' conduct and granted summary judgment to Germantown. Haessly now appeals.

It is undisputed that Kleinhans' homeowner's policy contained the standard exclusion for intentional acts of the insured. However, the harm caused by the intentional battery is not at issue in this case; Haessly concedes, as she must, that the "injuries *solely* attributable to the original intentional act are probably excluded under the terms of Germantown's intentional act exclusion clause." However, Haessly argues that the Germantown policy should provide coverage for her enhanced injuries, which she claims were the result of Kleinhans' negligent failure to render aid to her in the five days after the battery. She posits that the intentional tort of battery was followed by "a second, separate and independent [successive] tort," which she casts as "a substantive theory of negligence independent of Kleinhans' original intentional tortious act."

Summary judgment is proper if there is no genuine issue as to any material fact and one party is entitled to judgment as a matter of law. *See K.A.G. v. Stanford,* 148 Wis. 2d 158, 161, 434 N.W.2d 790, 792 (Ct. App. 1988); *see also* § 802.08(2), STATS. When reviewing a trial court's grant of summary judgment, we apply the same statutory standards as the trial court. *See K.A.G.,* 148 Wis. 2d at 161, 434 N.W.2d at 792. Although our conclusion affirms the grant of summary judgment to Germantown and our analysis is supportive of the reasoning of the trial court, we first address Germantown's contention that there is a line of Wisconsin cases that is controlling on the issue presented.

Germantown argues that "Wisconsin has developed a long line of case law on insurance coverage and the intentional act exclusion, which is embodied in cases like *Raby v. Moe,* 153 Wis. 2d 101, 450 N.W.2d 452 (1990) and *Pachucki [v. Republic Ins. Co.,* 89 Wis. 2d 703, 278 N.W.2d 898 (1979)][2] and is controlling in this case." Germantown claims that in all of these intentional act cases a defendant failed to aid the plaintiff after causing the injury. Germantown then analogizes that despite the failure to aid the victim, the courts "nonetheless held that coverage would not be afforded to these intentional actors."

We are not persuaded that the offered line of cases is controlling, nor are we convinced that the rule of law

---

[2] *Pachucki v. Republic Insurance Co.,* 89 Wis. 2d 703, 278 N.W.2d 898 (1979), addressed the seminal question of whether the intentional acts exclusion in a homeowner's policy excluded coverage "only upon adequate proof that the insured specifically intended the resulting injury." *Id.* at 707, 278 N.W.2d at 900. The holding of that case has been further refined in subsequent case law which we will outline in the following discussion.

embodied in those cases definitively speaks to the issue Haessly presents. While it is true that the defendants in the cases cited to by Germantown did not render aid to the respective plaintiffs, in none of those cases was that the issue before the court. Additionally, while the underlying policy adhered to by the courts in each of those decisions is analogous to the policy Germantown seeks to have applied in this case to deny coverage, the facts of those cases are totally different and therefore cannot be considered controlling. In order to clarify the reasoning upon which we ultimately base our decision, we first consider the holdings of the cases Germantown offers as dispositive of the issue before us.

In *K.A.G.*, the parents of a girl who was sexually molested sued the defendant and his insurer. At issue was coverage under a homeowner's policy which contained an exclusion for intentional acts. *See K.A.G.*, 148 Wis. 2d at 162, 434 N.W.2d at 792. The defendant admitted the sexual contact, but denied any intention to harm the girl as a result of the molestation. *See id.* at 160–61, 434 N.W.2d at 791. Nevertheless, we concluded that the sexual molestation of a minor is a type of conduct that warrants "an inference of an intent to injure," *id.* at 164, 434 N.W.2d at 793, without regard to the claimed intent, *see id.* at 165, 434 N.W.2d at 793. As we defined the parameters of our holding there:

> Although neither negligence nor certain kinds of intentional conduct are substantially likely to cause injury so as to warrant an inference of an intent to injure, certain types of intentional conduct do reach this level. While we need not now identify the parameters of this category of conduct, we conclude that the sexual molestation of a minor falls within this category.

113

*Id.* at 164, 434 N.W.2d at 793.[3]

In *Raby* this rule was adopted by the supreme court and extended to include criminal conduct when it is "of such a dangerous character as to impose a substantial threat to the well-being and safety of innocent victims." *Raby,* 153 Wis. 2d at 113, 450 N.W.2d at 456. There, the defendant agreed to drive the "getaway" car for a planned robbery of a liquor store. During the robbery, the liquor store attendant was shot and killed. The parents of the store attendant brought an action on behalf of their son, seeking damages. At the time of the robbery, the driver of the getaway car was insured under a homeowner's insurance policy. *See id.* at 106–07, 450 N.W.2d at 453–54.

The complaint alleged that the defendant was careless and negligent in planning and executing the robbery and that this negligence caused the death of the store attendant. *See id.* at 107, 450 N.W.2d at 454. The court there noted that in order for the homeowner's policy exclusion to preclude coverage, two requirements must be met. First, the insured must act intentionally, and second, he or she must intend some injury or harm to follow from the act. *See id.* at 110, 450 N.W.2d at 455. The supreme court ultimately agreed with the reasoning of *K.A.G.* that "whenever the crimi-

---

[3] In *N.N. v. Moraine Mutual Ins. Co.,* 153 Wis. 2d 84, 93, 450 N.W.2d 445, 449 (1990), the supreme court concluded that a "defendant's plea of guilty to the crime of sexual assault against a minor . . . is sufficient to satisfy the intent to act requirement of the *K.A.G.* test." Coupled with the precedent established by the court of appeals in *K.A.G.*, the court ultimately concluded that coverage under the homeowner's policy was not afforded because the intent to act was shown by the guilty plea, and intent to harm could then be inferred by law. *See N.N.,* 153 Wis. 2d at 97, 450 N.W.2d at 450.

nal conduct of the insured is of such a dangerous character as to impose a substantial threat to the well-being and safety of innocent victims," *Raby,* 153 Wis. 2d at 113, 450 N.W.2d at 456, the question of whether the insured intended injury to result from an intentional act may be inferred by a court as a matter of law. *See id.* at 112–15, 450 N.W.2d at 456–57.

Neither of these cases is controlling on the issue presented by Haessly. Both focused on the issue of whether a court could infer an intent to injure from an intent to do a criminal act. The holdings were carefully confined to the factual situation each presented. In contrast, Haessly argues in the instant case that after Kleinhans committed an intentional criminal act, battery, his subsequent failure to come to her aid and seek treatment for her was an independent act of *negligence* for which he then became liable. Thus, she reasons, his homeowner's policy should provide coverage for any liability Kleinhans incurs as a result of his negligent act. We address this issue of first impression.

Haessly argues that "Wisconsin has long recognized the doctrine of successive torts" and then quotes from *Bolick v. Gallagher,* 268 Wis. 421, 427, 67 N.W.2d 860, 863 (1955): "It is an elementary principle that where independent torts result in separate injuries, each tort-feasor is separately liable for his own torts." In further support of her argument, Haessly directs us to the RESTATEMENT (SECOND) OF TORTS § 322 (1965), "Duty to Aid Another Harmed by Actor's Conduct," which provides:

> If the actor knows or has reason to know that by his [or her] conduct, whether tortious or innocent, he [or she] has caused such bodily harm to another as to make him [or her] helpless and in danger of fur-

115

ther harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

Haessly urges us to adopt this doctrine and to recognize Kleinhans' failure to render aid to her in the aftermath of the battery as a separate negligent tort for which liability may attach.

In opposition, Germantown argues that Kleinhans' course of conduct cannot be broken into two separate torts and claims, "[Kleinhans'] conduct was to batter [Haessly], and the natural and probable consequence of that conduct was that Haessly would sustain bodily injury and need medical attention. . . . It is not a separate negligent act; it is a continuation of the intentional battery." Germantown then points to the "Exclusions" section of its policy, where it states: "**Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage** . . . *which is expected or intended* by the **insured**." (Emphasis in italics added.)

Although the parties focus on their respective tort theories as dispositive of the coverage issue, the question presented is whether Kleinhans' homeowner's policy, with its intentional acts exclusion, provides coverage for any of the liability he may incur based on his conduct during and after the battery. Haessly argues that there is coverage under a theory of successive torts, while Germantown maintains that Kleinhans' course of conduct was a single intentional tort.

 Both parties maintain that the dispositive issue is whether any portion of Kleinhans' conduct was negligent. However, an appellate court is not required to address the appellate issues as structured by the parties. *See State v. Waste Mgmt., Inc.,* 81 Wis. 2d 555, 564, 261 N.W.2d 147, 151 (1978). We also may affirm a

circuit court's decision even if the lower court reached its result for different reasons. *See Lecander v. Billmeyer,* 171 Wis. 2d 593, 602, 492 N.W.2d 167, 171 (Ct. App. 1992).

■

We conclude that the application of another principle of insurance contract law, the principle of "fortuitousness," is determinative of the coverage issue. This principle was adopted by the supreme court in *Hedtcke v. Sentry Insurance Co.,* 109 Wis. 2d 461, 326 N.W.2d 727 (1982). The court there stated:

> [I]nsurance covers fortuitous losses and [particular] losses are not fortuitous if the damage is intentionally caused by the insured. Even where the insurance policy contains no language expressly stating the principle of fortuitousness, courts read this principle into the insurance policy to further specific public policy objectives including (1) avoiding profit from wrongdoing; (2) deterring crime; (3) avoiding fraud against insurers; and (4) *maintaining coverage of a scope consistent with the reasonable expectations of the contracting parties* on matters as to which no intention or expectation was expressed.

*Id.* at 483–84, 326 N.W.2d at 738 (emphasis added). This principle is also supported in Wisconsin insurance law as the rule that an insurance policy should be construed as providing coverage "as it is understood by a reasonable person in the position of the insured." *Id.* at 487, 326 N.W.2d at 740.

■

We conclude that a reasonable person would not expect that his or her homeowner's policy would provide liability coverage for a failure to provide aid to someone whom he or she had previously rendered help-

117

less through an intentional act. As we noted in *K.A.G.,* 148 Wis. 2d at 165–66, 434 N.W.2d at 793, the dismissal of a coverage claim on the basis that no reasonable person would expect coverage is "based upon sound legal principles and may present a viable alternative analysis" to the holding in that case. Haessly's injuries were an expected and intended consequence of the battery. In *Pachucki,* the supreme court confirmed that one's intent goes beyond the initial act and

> must extend not only to those consequences which are desired, but also to those which the actor believes *are substantially certain to follow from what he does* . . . The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it.

*Pachucki,* 89 Wis. 2d at 711, 278 N.W.2d at 902 (emphasis added) (quoted source omitted). It is also well established that a person is presumed to intend "the natural and probable consequences of his acts voluntarily and knowingly performed." *State v. Gould,* 56 Wis. 2d 808, 814, 202 N.W.2d 903, 906–07 (1973).

The natural result of the battery was to injure Haessly. A probable consequence of inflicting such injury is that Haessly might require medical treatment. Kleinhans' failure to seek aid for her flowed from his intentional harm to her.[4] Although Haessly attempts to characterize Kleinhans' blatant disregard

---

[4] It is also not unreasonable to infer that Kleinhans' failure to seek aid for Haessly in the aftermath of the intentional battery was motivated primarily, if not entirely, by his intent to avoid detection of the crime and to protect himself from the questions that would, and indeed did, follow when Haessly was examined by medical personnel.

for her injuries as negligence, this does not change the intentional quality of his conduct. *See Baranowski v. City of Milwaukee,* 70 Wis. 2d 684, 688, 235 N.W.2d 279, 281 (1975) (although "couched in terms of negligence," the complaint therein alleged an intentional tort).

We also consider the public policy implications of our decision. In *Hagen v. Gulrud,* 151 Wis. 2d 1, 6–7, 442 N.W.2d 570, 573 (Ct. App. 1989), we explained that as a matter of sound public policy there is certain conduct for which there should be no coverage:

> "[T]he average person purchasing homeowner's insurance would cringe at the very suggestion that [he or she] was paying for such coverage. And certainly [he or she] would not want to share that type of risk with other homeowner's policyholders." [Quoted source omitted.]

Our supreme court reiterated this basic premise when it agreed that there are "compelling policy consideration[s] . . . precluding insurance recovery" in certain cases. *N.N. v. Moraine Mut. Ins. Co.,* 153 Wis. 2d 84, 94, 450 N.W.2d 445, 449 (1990) (discussing policy considerations underlying the preclusion of insurance recovery for victims of sexual assault). We recognize that one of the main justifications for allowing recovery is that victims are benefited because another potential source of compensation is made available. *See id.* at 95, 450 N.W.2d at 449. However, militating against this is the effect of such recovery on offenders, who are then permitted to escape having to personally compensate their victims for the harm they have inflicted. *See id.*

This public policy concern underpins our decision in the instant case. Allowing Kleinhans to compensate

Haessly by virtue of his homeowner's policy violates the principle of fortuity and would, as a matter of public policy, wrongly allow Kleinhans to escape the monetary consequences of having to personally compensate Haessly for her injuries.

*By the Court.*—Judgment affirmed.