Julie L. RABIDEAU, Plaintiff-Appellant-Petitioner,

v.

CITY OF RACINE, Defendant-Respondent.

Supreme Court

*No. 99–3263. Oral argument February 28, 2001.—Decided June 12, 2001.*

2001 WI 57

(Also reported in 627 N.W.2d 795.)

488

For the plaintiff-appellant-petitioner there were briefs by *Alan D. Eisenberg* and *Law Offices of Alan D. Eisenberg*, Milwaukee, and oral argument by *Alan D. Eisenberg*.

For the defendant-respondent there was a brief and oral argument by *W. Scott Lewis*, assistant city attorney.

¶ 1.   WILLIAM A. BABLITCH, J.   Dakota was shot by a City of Racine police officer. He subsequently died from the injury. Dakota lived with Julie Rabideau (Rabideau), who witnessed the events leading to his death. Rabideau subsequently filed a claim for damages against the City of Racine (the City). Racine County Circuit Court Judge Allan B. Torhorst granted summary judgment to the City, and the court of appeals affirmed.[1]

¶ 2.   The primary question presented in this case is whether Rabideau is entitled to damages for emotional distress. Although the question of whether or not a bystander may recover damages after witnessing an accident is a legal question that this court has previously addressed, this particular case is distinguishable from others: Dakota was a dog, a companion to Rabideau.

¶ 3.   At the outset, we note that we are uncomfortable with the law's cold characterization of a dog, such as Dakota, as mere "property."[2] Labeling a dog "property" fails to describe the value human beings place upon the companionship that they enjoy with a dog. A companion dog is not a fungible item, equivalent to other items of personal property.[3] A companion dog is

---

[1] *Rabideau v. City of Racine*, No. 99–3263, unpublished slip op. (Wis. Ct. App. June 7, 2000), was decided by one judge pursuant to Wis. Stat. § 752.31(2)(a) (1997–98).

[2] *See Campbell v. Animal Quarantine Station*, 632 P.2d 1066, 1071 n.5 (Haw. 1981) ("The law clearly views a dog as personal property. *Thiele v. City and County of Denver*, 135 Colo. 442, 312 P.2d 786 (1957); *Smith v. Costello*, 77 Idaho 205, 290 P.2d 742 (1955)").

[3] This argument concerning the distinction between companion animals and goods owned primarily for their economic value is set forth fully in Steven M. Wise, *Recovery of Common*

not a living room sofa or dining room furniture. This term inadequately and inaccurately describes the relationship between a human and a dog.

¶ 4. The association of dog and human is long-standing. Dogs have been a part of human domestic life since 6,300 B.C. Debra Squires-Lee, *In Defense of Floyd: Appropriately Valuing Companion Animals in Tort*, 70 N.Y.U. L. Rev. 1059, 1064 (1995). Archaeologists have uncovered a 12,000-year-old burial site in which a human being and a dog lay buried together. "The arm of the person was arranged on the dog's shoulder, as if to emphasize the bonds that existed between these two individuals during life." *Id.* (internal quotation marks and footnote omitted). Dogs are so much a part of the human experience that we need not cite to authority when we note that dogs work in law enforcement, assist the blind and disabled, perform traditional jobs such as herding animals and providing security, and, of course, dogs continue to provide humans with devoted friendship.

¶ 5. Nevertheless, the law categorizes the dog as personal property despite the long relationship between dogs and humans. To the extent this opinion uses the term "property" in describing how humans value the dog they live with, it is done only as a means of applying established legal doctrine to the facts of this case.

¶ 6. Two theories are proffered by Rabideau as grounds for the recovery of emotional damages: negligent infliction of emotional distress and intentional infliction of emotional distress. As to the first, as a predicate matter to bringing a claim for damages based

*Law Damages for Emotional Distress, Loss of Society, and Loss of Companionship for the Wrongful Death of a Companion Animal*, 4 Animal L. 33, 69–70 (1998).

492

upon the tort of negligent infliction of emotional distress the plaintiff must be related to the victim as spouse, parent-child, grandparent-grandchild, or sibling.[4] Because the relationship between Rabideau and Dakota did not fall within one of these categories, we find that she cannot maintain a claim on this basis.

¶ 7.  We further conclude that Rabideau cannot maintain a claim for recovery for the emotional distress caused by negligent damage to her property. Our decision is based upon well-established public policy criteria.[5] We are particularly concerned that were such a claim to go forward, the law would proceed upon a course that had no *just* stopping point. Humans have an enormous capacity to form bonds with dogs, cats, birds and an infinite number of other beings that are non-human. Were we to recognize a claim for damages for the negligent loss of a dog, we can find little basis for rationally distinguishing other categories of animal companion.

¶ 8.  Rabideau's second theory is based upon intentional infliction of emotional distress. We concur with the court of appeals that Rabideau's complaint cannot survive summary judgment when examined within the framework of set forth in *Alsteen v. Gehl*, 21 Wis. 2d 349, 359, 124 N.W.2d 312 (1963).

¶ 9.  In addition to these claims we address three additional issues. First, we conclude that Rabideau's complaint, liberally read, encompasses a claim for damages for property loss.

¶ 10.  Second, we find that genuine issues of material fact exist as to whether Officer Thomas Jacobi

---

[4] *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 657, 517 N.W.2d 432 (1994).

[5] *Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis. 2d 138, 144–45, 549 N.W.2d 714 (1996).

was entitled as a matter of law to shoot and kill Dakota. *See* Wis. Stat. § 174.01 (1997–98).[6] Accordingly, we reverse the circuit court's grant of summary judgment on the basis of § 174.01.

¶ 11.  Third, we reverse the determination by the circuit court that this complaint was frivolous. We conclude that Rabideau's complaint for damages for the intentional infliction of emotional distress was one that could properly be brought, although the elements for that claim were not satisfied so as to survive a motion for summary judgment. As to Rabideau's claim for damages based upon the negligent infliction of emotional distress, her brief to the court of appeals and this court set forth a good faith argument for an extension of the law. Under these circumstances a finding of frivolousness was erroneous.

## Standard of Review

¶ 12.  In this case we are reviewing the circuit court's grant of summary judgment to the City.[7] This presents a question of law that we review de novo. *Strasser v. Transtech Mobile Fleet Serv.*, 2000 WI 87, ¶ 28, 236 Wis. 2d 435, 613 N.W.2d 142. Pursuant to Wis. Stat. § 802.08(2), summary judgment shall be granted if there is no genuine issue as to any material

---

[6] All references to the Wisconsin Statutes are to the 1997–98 version unless noted otherwise.

[7] The City filed a motion to dismiss for failure to state a claim upon which relief could be granted. We agree with the court of appeals that because the circuit court considered matters outside the pleadings, the case should be treated as a review of a grant of summary judgment pursuant to Wis. Stat. § 802.06(3) *Rabideau*, No. 99–3263, unpublished slip op. at 3 (Wis. Ct. App. June 7, 2000).

fact and the moving party is entitled to judgment as a matter of law. "In analyzing whether there are genuine issues of material fact, we draw all reasonable inferences in favor of the nonmoving party." *Strasser*, 2000 WI 87 at ¶ 32.

## Analysis

¶ 13. We begin our analysis by briefly reviewing the facts. Rabideau and Officer Jacobi were neighbors. On March 31, 1999, Officer Jacobi had just returned home. Across the street, Rabideau was returning home as well. Dakota jumped out of Rabideau's truck. He crossed the street to the Jacobi house where Jed, the Jacobi's Chesapeake Bay retriever, was in the yard.

¶ 14. There is significant disagreement between the parties concerning what subsequently occurred. The City argued that Dakota came onto the Jacobi property and attacked Jed. Officer Jacobi, it is contended, shouted at Dakota to no effect. The City argues that Officer Jacobi, fearing for the safety of Jed, and for the safety of his wife and child who were nearby, fired a number of shots with his service revolver. Dakota moved toward the street and turned his head and was snarling. Officer Jacobi, believing the dog was about to charge, fired a third time and struck Dakota.

¶ 15. On the other hand, Rabideau contends that Dakota was sniffing Jed, not biting or acting aggressively. She asserts that she called Dakota and was crossing the street to retrieve him when shots rang out.

¶ 16. Although both parties agree that three shots were fired, Rabideau maintains that Dakota was stepping off the curb toward her when he was hit by Officer Jacobi's second shot. Rabideau asserts that while Dakota was struggling to crawl away, Officer Jacobi fired again and missed.

495

¶ 17.   Two days after the shooting occurred, Rabideau was informed that Dakota died. Upon hearing this news, she collapsed and was given medical treatment.

¶ 18.   Rabideau filed a complaint in small claims court, which stated: "City of Racine Police Officer Thomas Jacobi shot and killed my dog, Dakota, and caused me to collapse and require medical attention."

I

¶ 19.   The circuit court and the court of appeals both determined that Rabideau's complaint set forth a claim for emotional distress. The circuit court addressed this complaint as one asserting a claim of negligent infliction of emotional distress. The court of appeals addressed both negligent infliction of emotional distress and intentional infliction of emotional distress. In this review, we will address both claims.

A

¶ 20.   Rabideau argues that the tort of negligent infliction of emotional distress to a bystander should encompass the facts of this case. Our tort law recognizes a claim for damages where a bystander suffers great emotional distress after witnessing an accident or its gruesome aftermath involving death or serious injury to a close relative. *See Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994). The elements of the claim are: " '(1) that the defendant's conduct [in the underlying accident] fell below the applicable standard of care, (2) that the plaintiff suffered an injury [severe emotional distress], and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury.' " Wis JI—Civil 1510 Comment (quot-

ing *Bowen*, 183 Wis. 2d at 632.) Rabideau's complaint sets forth these elements.

¶ 21.   Nevertheless, even if a plaintiff sets forth the elements of a negligence claim, a court may determine that liability is precluded by public policy considerations. *Gritzner v. Michael R.*, 2000 WI 68, ¶ 26, 235 Wis. 2d 781, 611 N.W.2d 906. Before a court makes such a determination, it is typically the better practice to submit the case to the jury. *Id.* If, however, the facts of the case are not complex and the attendant public policy issues are presented in full, then this court may determine before trial if liability is precluded by public policy. *Id.* Accordingly, we turn next to a consideration of the public policy concerns presented by this issue.

¶ 22.   The *Bowen* analysis noted that two concerns have historically shaped the development of the tort of negligent infliction of emotional distress. These concerns are (1) establishing that the claim is genuine, and (2) ensuring that allowing recovery will not place an unfair burden on the tortfeasor. *Bowen*, 183 Wis. 2d at 655.

¶ 23.   Where, as in the present case, the issue presented is negligent infliction of emotional distress on a bystander, *Bowen* identified three public policy factors to be applied in an effort to establish that the claim is genuine, the tortfeasor is not unfairly burdened, and that other attendant public policy considerations are not contravened. *Id.* at 655–58. First, the victim must have been killed or suffered a serious injury. Second, the plaintiff and victim must be related as spouses, parent-child, grandparent-grandchild or siblings. Third, "the plaintiff must have

observed an extraordinary event, namely the incident and injury or the scene soon after the incident with the injured victim at the scene." *Id.* at 633.

¶ 24.   We need not address each of these factors because it is plain that the victim in this case is not related to Rabideau as a spouse, parent, child, sibling, grandparent or grandchild. Accordingly, she cannot maintain a claim for negligent infliction of emotional distress.

¶ 25.   Rabideau urges that we extend this category to include companion animals. In her words, "[a]nyone who has owned and loved a pet would agree that in terms of emotional trauma, watching the death of a pet is akin to losing a close relative." Further, she contends that we need not engage in an analysis of whether companion animals are "family," but should instead examine the rationale supporting the limitation to certain family members. Rabideau argues that the limitation of claims to family members is a means of assuring forseeability as well as a reasonable limitation of the liability of a negligent tortfeasor. According to Rabideau, the bond between companion animals and humans is one that is sufficiently substantial to ensure that these concerns are met.

¶ 26.   We agree, as we must, that humans form important emotional connections that fall outside the class of spouse, parent, child, grandparent, grandchild or sibling. We recognized this in *Bowen*,[8] and repeat here, that emotional distress may arise as a result of witnessing the death or injury of a victim who falls outside the categories established in tort law. However, the relationships between a victim and a spouse, parent, child, grandparent, grandchild or sibling are

---

[8] *Bowen*, 183 Wis. 2d at 657.

deeply embedded in the organization of our law and society. The emotional loss experienced by a bystander who witnessed the negligent death or injury of one of these categories of individuals is more readily addressed because it is less likely to be fraudulent and is a loss that can be fairly charged to the tortfeasor. The emotional harm occurring from witnessing the death or injury of an individual who falls into one of these relationships is serious, compelling, and warrants special recognition. *Id.* at 657.

¶ 27.　We concluded in *Bowen* that for the present time these tort claims would be limited; we reach the same conclusion in this case. We note that this rule of nonrecovery applies with equal force to a plaintiff who witnesses as a bystander the negligent injury of a best friend who is human as it does to a plaintiff whose best friend is a dog.

¶ 28.　Had Rabideau been a bystander to the negligent killing of her best human friend, our negligence analysis would be complete. However, as we have previously noted the law categorizes dogs as property. We turn, therefore, to consider whether Rabideau can maintain a claim for negligent infliction of emotional distress arising from property loss.

¶ 29.　In *Kleinke v. Farmers Cooperative Supply & Shipping*, 202 Wis. 2d 138, 145, 549 N.W.2d 714 (1996), we concluded that under Wisconsin's formulation of tort law, "it is unlikely that a plaintiff could ever recover for the emotional distress caused by negligent damage to his or her property." This conclusion was founded upon public policy.[9]

---

[9] At least one other court has adopted a different approach. Hawaii permits recovery for mental distress occurring as a result of the negligent destruction of property. *Campbell*, 632

¶ 30.   The public policy analysis in *Kleinke* drew upon the reasoning of *Bowen*. In *Bowen* this court listed six public policy factors addressed by courts when considering the authenticity and fairness of an emotional distress claim. These various public policy considerations set forth in *Bowen*, and cited in *Kleinke*, are:

> (1)   Whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) whether allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) whether allowance of recovery would be too likely to open the way to fraudulent claims; or (6) whether allowance of recovery would enter a field that has no sensible or just stopping point.

*Kleinke*, 202 Wis. 2d at 144–45 (quoting *Bowen*, 183 Wis. 2d at 655).

¶ 31.   In this case we need only examine one of the *Bowen* - *Kleinke* factors to conclude that there is no basis for recovery here. This factor concerns whether allowance of recovery would enter a field that has no sensible or just stopping point. Rabideau suggests that limiting liability to the human companion of a companion animal who is killed may satisfy this concern. We

---

P.2d at 1071 (citing *Rodrigues v. State*, 472 P.2d 509 (Haw. 1970)). Based upon this principle of Hawaiian tort law, in *Campbell* the Hawaii Supreme Court allowed recovery for serious mental distress resulting when the plaintiffs' dog died of heat prostration after being loaded into an unventillated van on a hot afternoon, and the van was exposed directly to the sun.

find this proposed resolution unsatisfactory. First, it is difficult to define with precision the limit of the class of individuals who fit into the human companion category. Is the particular human companion every family member? the owner of record or primary caretaker? a roommate? Second, it would be difficult to cogently identify the class of companion animals because the human capacity to form an emotional bond extends to an enormous array of living creatures. Our vast ability to form these bonds adds to the richness of life. However, in this case the public policy concerns relating to identifying genuine claims of emotional distress, as well as charging tortfeasors with financial burdens that are fair, compel the conclusion that the definition suggested by Rabideau will not definitively meet public policy concerns.

¶ 32.    Based upon all the above, we conclude that Rabideau cannot maintain a claim for the emotional distress caused by negligent damage to her property.

## B

■

¶ 33.    Next, we consider Rabideau's claim of intentional infliction of emotional distress. Four elements must be established for a plaintiff to maintain such a claim. A plaintiff must demonstrate (1) that the defendant's conduct was intentioned to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct. *Alsteen*, 21 Wis. 2d at 359–60; Wis JI—Civil 2725. We agree with the court of appeals' conclusion that summary judgment is warranted here.

¶ 34. The first *Alsteen* element requires the plaintiff to demonstrate that the defendant acted with the intent to cause emotional harm. "One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from it." *Id.* at 358 (emphasis omitted). In this case, there is no material issue of fact in the record that suggests that Officer Jacobi acted for the purpose of causing Rabideau emotional harm.

¶ 35. Rabideau argues that she need only show that Officer Jacobi acted intentionally when he shot Dakota. She contends that by shooting Dakota while she was present, Officer Jacobi would have known that his act would cause her severe emotional distress. Rabideau argues that such knowledge is tantamount to intentionally causing severe emotional distress because "a person is presumed to intend 'the natural and probable consequences of his acts voluntarily and knowingly performed.'" *Haessley v. Germantown Mut. Ins. Co.*, 213 Wis. 2d 108, 118, 569 N.W.2d 804 (Ct. App. 1997) (quoting *State v. Gould*, 56 Wis. 2d 808, 814, 202 N.W.2d 903 (1973)).

¶ 36. The presumption cited by Rabideau from *Haessley* is generally applied in criminal cases. *See Hawpetoss v. State*, 52 Wis. 2d 71, 80, 187 N.W.2d 823 (1971). Rabideau's application in this case of the general rule that an accused is presumed to intend the natural and probable consequences of his act obfuscates what is required by the first element of this cause of action. The plaintiff must establish that the purpose of the conduct was to cause emotional distress. There is no question that Officer Jacobi intended to fire his weapon at Dakota. However, there is no evidence to

indicate he did so to cause emotional distress to Rabideau. Certainly that was a by-product, but that is insufficient standing alone. This is a limitation upon the cause of action for the intentional infliction of emotional distress. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 694–95, 271 N.W.2d 368 (1978). There must be something more than a showing that the defendant intentionally engaged in the conduct that gave rise to emotional distress in the plaintiff; the plaintiff must show that the conduct was engaged in for the purpose of causing emotional distress. While intent may be evidenced by inferences from words, conduct or the circumstances in which events occurred, in the present case there is no asserted fact as to this element. Accordingly, we are not persuaded by Rabideau's argument, and we affirm the court of appeals' grant of summary judgment.

II

¶ 37.   Although we affirm the court of appeals' decision as to Rabideau's claims for damages based upon emotional distress, we hold that the court erred in its conclusion that Rabideau's claim did not seek damages for lost property. A claim for damages for property loss as the result of Officer Jacobi's action is the most conventional claim Rabideau could have brought, and is without doubt the most widely recognized claim that arises when an animal is killed. *See* 1 Dan B. Dobbs, *Law of Remedies* § 5.15(3), at 898 (2d ed. 1993); Robin Cheryl Miller, Annotation, *Damages for Killing or Injuring Dog*, 61 A.L.R.5th 635 (1998). We therefore hold that Rabideau's complaint, liberally construed, also encompassed a demand for damages for property loss. We decline to further address the proper means to

measure this property loss or whether other elements, such as veterinary expenses incurred in treating a companion animal's injuries, may be recovered. These issues were not thoroughly briefed by both parties. *See State v. Bodoh*, 226 Wis. 2d 718, 737, 595 N.W.2d 330 (1999) (issues not raised or considered in the trial court will not be considered for the first time on appeal unless the new issue is a question of law that the parties have thoroughly briefed, and there are no disputed issues of fact regarding the new issue).

## III

¶ 38. The next issue we consider concerns the circuit court's grant of summary judgment on the basis of Wis. Stat. § 174.01. As an affirmative defense, the City asserted that Officer Jacobi was privileged to shoot and kill Dakota pursuant to this statute. Section 174.01 provides as follows:

> (1) Killing a dog. (a) Except as provided in par. (b), a person may intentionally kill a dog only if a person is threatened with serious bodily harm by the dog and:
>
> > 1. Other restraining actions were tried and failed; or
> >
> > 2. Immediate action is necessary.
>
> (b) A person may intentionally kill a dog if a domestic animal that is owned or in the custody of the person is threatened with serious bodily harm by the dog and the dog is on property owned or controlled by the person and:
>
> > 1. Other restraining actions were tried and failed; or

2. Immediate action is necessary.

(2)  Inapplicable to officers, veterinarians and persons killing their own dog. This section does not apply to an officer acting in the lawful performance of his or her duties under s. 29.931 (2)(b), 95.21, 174.02(3) or 174.046(9), or to a veterinarian killing a dog in a proper and humane manner or to a person killing his or her own dog in a proper and humane manner.

(3)  Liability and penalties. A person who violates this section:

(a)  Is liable to the owner of the dog for double damages resulting from the killing;

(b)  Is subject to the penalties provided under s. 174.15; and

(c)  May be subject to prosecution, depending on the circumstances of the case, under s. 951.02.

¶ 39.  The court of appeals concluded that the circuit court improperly applied summary judgment procedures when determining whether Officer Jacobi was privileged to shoot Dakota under Wis. Stat. § 174.01. However, the court of appeals further determined that the issue was moot because it determined that even if Officer Jacobi's actions were not privileged, Rabideau could not recover damages pursuant to her complaint. *Rabideau*, No. 99–3263, unpublished slip op. at 9–10 (Wis. Ct. App. June 7, 2000).

¶ 40.  Based upon our examination of the record we agree that summary judgment on this issue was improper because material facts pertaining to the statute are in dispute. For example, although the City asserts that Dakota and Jed were fighting, Rabideau contends that they were not in a fight. Rabideau asserts that Dakota was not threatening Officer

Jacobi, his wife or his child. The City disagrees. Rabideau claims Dakota was on the curb; the City contends the dogs were in Officer Jacobi's yard.

¶ 41. We also note that the exemption for police officers provided in Wis. Stat. § 174.01(2) requires that the officer is acting pursuant to one of a variety of statutes. However, the record does not establish that Officer Jacobi was acting under any of the enumerated statutory provisions.

¶ 42. We disagree with the court of appeals' conclusion that the granting of summary judgment on the basis of this statute was moot. Wisconsin Stat. § 174.01(3) provides that an individual who intentionally kills a dog in violation of the statute is liable to the owner for double damages. Therefore, because material facts are in dispute, the circuit court's order of summary judgment pursuant to § 174.01(1) is reversed.

## IV

¶ 43. Finally, Rabideau asserts that the circuit court erred by finding her claim frivolous and awarding attorney fees and costs to the City of Racine. We agree.

¶ 44. The circuit court made a finding of frivolousness grounded upon Wis. Stat. § 814.025(3)(b).[10] The circuit court noted that in this case two identical small claims complaints were filed. One complaint was signed by Julie Rabideau and date stamped July 28, 1999, at 3:30 p.m. A second complaint was signed by her attorney and date stamped July 28, 1999, at 3:33 p.m. The circuit court held that the attorneys for Rabi-

---

[10] The circuit court based its finding of frivolousness solely upon Wis. Stat. § 814.025. We need not address the City's contention that standards utilized for finding frivolousness under Wis. Stat. § 802.05 apply to § 814.025.

deau were to be responsible for all costs and fees incurred by the City. Under § 814.025(3)(b), costs for frivolous claims may be awarded upon a finding that the party or attorney "knew, or should have known" that the claim was "without any reasonable basis in law or equity."

¶ 45.    Courts tread carefully when considering a claim of frivolous action, for the "ingenuity, foresightedness and competency of the bar must be encouraged and not stifled." *Radlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 613, 345 N.W.2d 874 (1984). The statute reflects this policy by requiring the court to consider whether the party or attorney knew the action was without any reasonable basis in law, *and* could not be supported by a good faith argument for an extension, modification or reversal of existing law.[11] As to this second step, the circuit court is to consider each of the alternative possibilities of a good faith argument, that is, was the existing law ready for an extension, modification or reversal. If the law is not ready for an extension, modification or reversal, the court is to con-

---

[11] Wisconsin Stat. § 814.025 provides in relevant part:

(1)    If an action. . .is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

. . .

(3)    In order to find an action. . .frivolous under sub.(1), the court must find one or more of the following:

. . .

(b)    The party or the party's attorney knew, or should have known, that the action, special proceeding counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

507

sider whether the argument for the change was made in good faith. *Id.* at 612.

¶ 46. An analysis of frivolousness under Wis. Stat. § 814.025(3)(b) presents a mixed question of fact and law. *State v. State Farm Fire & Cas. Co.*, 100 Wis. 2d 582, 601–02, 302 N.W.2d 827 (1981). A determination of what the party knew or should have known is a question of fact. *Id.* A conclusion as to whether what was known, or should have been known, warrants a finding of frivolousness is a question of law which we review de novo. *Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 241, 517 N.W.2d 658 (1994). In this case, the fundamental facts were sufficiently established to render our analysis here to be solely a question of law. This analysis is based upon an objective standard: " 'whether the attorney knew or should have known that the position taken was frivolous as determined by what a *reasonable attorney* would have known or should have known under the same or similar circumstances.' " *Id.* (quoting *Sommer v. Carr*, 99 Wis. 2d 789, 799, 299 N.W.2d 856 (1981)). All doubts on this issue are resolved in favor of the party or attorney. *Zinda v. Krause*, 191 Wis. 2d 154, 176, 528 N.W.2d 55 (Ct. App. 1995); *In re Paternity of James A.O.*, 182 Wis. 2d 166, 184, 513 N.W.2d 410 (Ct. App. 1994).

¶ 47. In this review, we have concluded that Rabideau's complaint, liberally construed, encompassed a claim for property loss. Additionally, we have concluded that Rabideau's complaint for damages for the intentional infliction of emotional distress was properly brought, although the elements for that claim were not satisfied. Finally, as to Rabideau's claim for damages based upon the negligent infliction of emotional

distress, her brief to the court of appeals, as well as her arguments before this court, adequately defended her position. We conclude that she has set forth a substantial argument in good faith for an extension, modification or reversal of existing law. As a result, we reverse the circuit court's finding of frivolousness.[12]

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause remanded to the circuit court.

¶ 48. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I agree with the majority opinion's conclusions about intentional infliction of emotional distress, negligent infliction of emotional distress, property damage, and the issue of frivolousness. The only cause of action in this case is for property loss.

¶ 49. I wish to emphasize that this case is about the rights of a pet owner to recover in tort for the death of her dog. Scholars would not classify this case as one about animal rights.

¶ 50. Professor Martha Nussbaum has pointed out that one's love of a pet should not be mistaken for concern about the ethical rights of animals.[1] Professor Nussbaum explains this error as follows:

---

[12] At oral argument counsel for Rabideau raised for the first time the issue of recovering damages for loss of companionship. Because this issue was neither raised in the petition for review nor argued in the briefs, we do not address it.

[1] *See* Martha C. Nussbaum, Book Review: Animal Rights: The Need for a Theoretical Basis, reviewing Steven M. Wise, *Rattling the Cage: Toward Legal Rights for Animals*, 114 Harv. L. Rev. 1506 (2001).

Commonly, we conflate two sorts of people: animal lovers and people who are sensitive to the ethical rights of animals. This conflation is a great error. In human life, we can easily take its measure: men may be genuine lovers of women while treating them extremely badly. . . .Even people who treat well the particular women they love may not care at all about women's rights generally.[2]

¶ 51.　Professor Nussbaum further explains the difference between animal lovers and proponents of animal rights by noting that while many of us have affectionate relationships with animals such as dogs and cats and horses, we also eat meat and eggs and wear leather, and we do not concern ourselves with the conditions under which these goods are produced.[3]

¶ 52.　For purposes of recovery for negligent infliction of emotional distress, this court treats the death of a dog the same as it treats injury to or death of a best friend, a roommate, or a nonmarital partner: It allows no recovery.

¶ 53.　Having concluded that the plaintiff's only remedy is for loss of property, the majority opinion declines to give guidance to the circuit court and litigants about damages for the death of the dog. This issue was not briefed. At least one state has enacted a law that allows up to $4,000 recovery for non-economic damages such as loss of the reasonably expected companionship, love, and affection of a pet resulting from the intentional or negligent killing of the pet.[4] Such a statute allows the legislature to make a considered policy judgment regarding the societal value of pets as

[2] *Id*. at 1544.

[3] *Id*. at 1509–10.

[4] *See* Tenn. Code Ann. § 44–17–403 (2001).

companions and to specify the nature of the damages to be awarded in a lawsuit.[5]

¶ 54.  For the reasons set forth, I write separately.

---

[5] *See* 1 Dan B. Dobbs, *Law of Remedies* § 5.15(3), at 898–900 (2d ed. 1993) (discussing courts' varied approaches toward damage awards in cases involving injuring or killing of a pet).