STATE of Wisconsin, Plaintiff-Respondent,

v.

Jene R. BODOH, Defendant-Appellant-Petitioner.

Supreme Court

*No. 97–0495–CR. Oral argument April 13, 1999.—Decided June 18, 1999.*

(Also reported in 595 N.W.2d 330.)

720

For the defendant-appellant-petitioner there were briefs by *Michael D. Mandelman* and *Michael D. Mandelman, S.C.*, Milwaukee and oral argument by *Michael D. Mandelman*.

For the plaintiff-respondent the cause was argued by *Gregory M. Posner-Weber*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. WILLIAM A. BABLITCH, J. The defendant, Jene R. Bodoh (Bodoh), was tried and convicted of injury by negligent handling of dangerous weapon in violation of Wis. Stat. § 940.24 as a result of his two Rottweiler dogs attacking a fourteen-year-old boy who was riding his bicycle. Bodoh requests that this court reverse the decision of the court of appeals which upheld his conviction. Bodoh asserts: 1) his dogs are not "dangerous weapons" as that phrase is used in the

statute; 2) he was not "handling" or "operating" his dogs at the time of the attack as those words are used in the statute; and 3) he was not "criminally negligent" in the handling of his dogs as that phrase is used in the statute. We conclude that a dog can be a dangerous weapon if used or intended to be used in a manner calculated or likely to cause death or great bodily harm, and that Bodoh "handled" his dogs in that he was responsible for supervising, directing and controlling them. Also, we conclude there was sufficient and credible evidence to support the jury's verdict finding Bodoh guilty of causing injury by negligent handling of a dangerous weapon. Therefore, we affirm the court of appeals. Bodoh also asserts, for the first time in his briefs to this court, that he was subject to selective prosecution. We decline to consider this issue not raised in Bodoh's petition for review.

¶ 2.   The facts presented by this case are the following. On June 10, 1995, two Rottweiler dogs chased fourteen-year-old Gregory L. Burns (Burns) who was riding his bicycle. The two dogs pulled Burns from his bicycle and bit him several times, causing him injuries requiring over 300 stitches. The dogs continued to bite as he tried to run away. A neighbor heard his screams and called the police.

¶ 3.   When officers from the Calumet County Sheriff's Department reached the scene, one dog was laying near Burns on the sidewalk. The dog growled as the officers tried to approach, and the officers shot and killed it. The other dog was found nearby at an elementary school. It also growled when approached and was shot and killed.

¶ 4.   The officers determined that defendant Jene R. Bodoh was the owner of the dogs. Bodoh was charged with causing injury by negligent handling of a danger-

ous weapon, contrary to Wis. Stat. § 940.24 (1993–94).[1] Further facts will be discussed within the opinion.

¶ 5. On June 6, 1996, a jury convicted Bodoh of causing injury by negligent handling of a ·dangerous weapon. The Calumet County Circuit Court, the Honorable Donald A. Poppy presiding, denied Bodoh's motion for judgment notwithstanding the verdict. The court withheld ·sentence and placed the defendant on five years probation and imposed restitution. The circuit court also ordered, as conditions of probation, that Bodoh serve 30 days in the county jail and that he not keep any dogs at his residence unless approved by his probation agent. The circuit court granted defendant's motion to stay his 30-day jail term pending appeal. Other conditions of probation were not stayed. Bodoh appealed his conviction to the court of appeals.

¶ 6. The court of appeals, in a split decision, affirmed Bodoh's conviction. *State v. Bodoh*, 220 Wis. 2d 102, 582 N.W.2d 440 (Ct. App. 1998). Bodoh petitioned this court for review pursuant to Wis. Stat. § (Rule) 809.62(1), which we granted.

¶ 7. Wisconsin Stat. § 940.24 provides that a person is guilty of an offense under the statute if the person causes bodily harm to another by negligently operating or handling a dangerous weapon. The State of Wisconsin (State) must prove three elements beyond a reasonable doubt: 1) that the defendant operated or handled a dangerous weapon; 2) that the defendant

---

[1] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise indicated.

Wisconsin Stat. § 940.24 provides: "**940.24 Injury by negligent handling of dangerous weapon, explosives or fire.** Whoever causes bodily harm to another by the negligent operation or handling of a dangerous weapon, explosives or fire is guilty of a Class E felony."

operated or handled the dangerous weapon in a manner that is criminally negligent; and 3) that the criminal negligence caused bodily harm to the victim. Wis JI—Criminal 1260 (1989).

¶ 8.   Bodoh asserts: 1) his dogs are not "dangerous weapons" as that phrase is used in the statute; 2) he was not "handling" or "operating" his dogs at the time of the attack as those words are used in the statute; and 3) he was not "criminally negligent" in the handling of the dogs as those words are used in the statute. We will address each argument in turn.

■■■

¶ 9.   To address Bodoh's arguments, we must interpret Wis. Stat. § 940.24. Statutory interpretation and applying a statute to a set of facts are both questions of law which this court reviews de novo. *State ex rel. Reimann v. Circuit Court for Dane Cty.*, 214 Wis. 2d 605, 613, 571 N.W.2d 385 (1997); *Martin v. Richards*, 192 Wis. 2d 156, 194, 531 N.W.2d 70 (1995). Our goal with statutory interpretation is to discern the intent of the legislature. *Reimann*, 214 Wis. 2d at 613. We rely foremost on the plain language of the statute. *Id.* If the plain language is ambiguous, we turn to the legislative history, context, scope and object of the statute. *Id.* at 614.

¶ 10.   The definition of "dangerous weapon" is: "any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Wis. Stat. § 939.22(10) (reprinted in full below).[2] This defi-

---

[2] Wisconsin Stat. § 939.22(10) provides in full:

(10) "Dangerous weapon" means any firearm, whether loaded or unloaded; any device designed as a weapon and capable of producing death or great bodily harm; any electric weapon, as defined in s. 941.295(4); or any other device or instrumentality

nition provides a broad category that can extend to virtually anything that can cause death or great bodily harm[3] if used or intended to be used in such a manner. Wis JI—Criminal 910 n.7 (1997).

¶ 11. A dog can constitute a "dangerous weapon" under Wis. Stat. § 939.22(10). *State v. Sinks*, 168 Wis. 2d 245, 252, 483 N.W.2d 286 (Ct. App. 1992). The issue presented in *Sinks* mirrored the statutory definition of "dangerous weapon": "whether a dog is an instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." *Id.* at 253; *see also* § 939.22(10). The *Sinks* court first determined that an "instrumentality" is a term broad enough to include animate, as well as inanimate, objects. *Sinks*, 168 Wis. 2d at 253. The court of appeals found support in a Michigan appellate court decision which determined that whether an object was animate or inanimate was not determinative, but rather, "it is the manner in which the instrumentality is used and the nature of the act that determines whether the instrumentality is a dangerous weapon." *Id.* at 254 (citing *People v. Kay*, 328 N.W.2d 424, 426 (Mich. Ct. App. 1982)).

¶ 12. Having determined that a dog can be a dangerous weapon, the court of appeals went on to consider whether there was sufficient evidence to prove that the defendant "used or intended to use" the dog in a way so as to cause death or great bodily harm. *Sinks*, 168 Wis.

---

which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm.

[3] "Great bodily harm" is defined as "bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." Wis. Stat. § 939.22(14).

2d at 254. The court of appeals determined that there was sufficient evidence for the jury to reach this conclusion. *Id.* at 255. The defendant, charged with sexual assault, first informed the victim that his Doberman Pinscher dog had prevented a burglar from escaping after robbing his home. *Id.* at 248, 254. The defendant also commanded the dog to "guard" and the dog was present throughout the sexual assaults. *Id.* The court of appeals concluded that a reasonable jury could "believe that Sinks used or threatened the use of his dog in such a manner that the dog constituted a dangerous weapon and was likely to produce, at the very least, great bodily harm. . . ." *Id.* at 255.

¶ 13. Further support for the conclusion that a dog can be a dangerous weapon is found in the legislative history of Wis. Stat. § 940.24. In 1987, the legislature amended § 940.24 to delete the terms "firearm, airgun, knife or bow and arrow" and replace the terms with "dangerous weapons, explosives or fire." 1987 Wis. Act 399, § 472zkj. "The definition of the offense is broadened to include highly negligent handling of fire, explosives and dangerous weapons other than a firearm, airgun, knife or bow and arrow." Judicial Council Committee Note—1987 S.B. 191, Wis. Stat. Ann. § 940.24 (West 1996). This definition of "dangerous weapon" "creates the potential for greatly expanding the scope of the statute. . . .Section 940.24 as revised may apply to injuries caused by *any* 'device used in a manner likely to cause death or great bodily harm.' " Wis JI—Criminal 1260 n.2 (emphasis added).

¶ 14. Relying on the statutory definition of "dangerous weapon" and *Sinks*, we agree with the court of appeals that a dog can be a dangerous weapon. A dog is an instrumentality which can be used or intended to be

726

used to cause death or great bodily harm. It is the manner in which the dog is used and the nature of the act that is determinative of whether the dog is a dangerous weapon. *See Sinks*, 168 Wis. 2d at 254.

■

¶ 15.   We must next determine whether there was sufficient evidence presented to the jury to prove that Bodoh used or intended to use his two Rottweiler dogs in a manner so as to produce death or great bodily harm. In determining the sufficiency of the evidence, we must view the evidence most favorably to the State and the conviction, and query whether the evidence is so insufficient in force and probative value that no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

> When an appellate court independently reviews the evidence presented at trial to determine whether, in its view, there are reasonable theories consistent with the defendant's innocence, it replaces the trier of fact's overall evaluation of the evidence with its own. A theory of innocence which appears to be reasonable to an appellate court on review of the record may have been rejected as unreasonable by the trier of fact in view of the evidence and testimony presented at trial. It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).
>
> In viewing evidence which could support contrary inferences, the trier of fact is free to choose among conflicting inferences of the evidence and may, *within the bounds of reason*, reject that inference which is consistent with the innocence of the

accused. *See Peters [v. State]*, 70 Wis. 2d [22, 34, 233 N.W.2d 420 (1975)]. Thus, when faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law. *See Jackson*, 443 U.S. at 326; *State v. Wilson*, 149 Wis. 2d 878, 894, 440 N.W.2d 534 (1989).

*Id.* at 506–07.

¶ 16.  Evidence presented at trial to show that Bodoh used or intended to use his Rottweilers in a manner so as to produce death or great bodily harm includes the following. A Calumet County Sheriff's Department Lieutenant testified regarding a letter Bodoh had sent to the Department which referred to his dogs as "watch dogs." We agree with Bodoh that this information, is not, by itself, conclusive that Bodoh's dogs were "attack dogs" or intended to produce death or great bodily harm. However, this letter, combined with other evidence presented at trial is sufficient for a reasonable jury to reach this conclusion. The State's expert witness, June Ashford, a dog trainer with 20 years of experience, testified that if a dog is trained improperly or not trained sufficiently, it can attack indiscriminately. She testified that an example of improper or insufficient training is rewarding, or at least failing to punish, a dog that has engaged in bad behavior such as biting or attacking someone. Bodoh's own veterinarian testified that once a dog has bitten, it has a higher propensity to bite again.

¶ 17.  Several examples of the aggressive and vicious behavior of Bodoh's dogs, demonstrating improper or insufficient training, were presented at trial. Earlier the same evening that Burns was

728

attacked, two Rottweiler dogs chased another boy riding a bicycle. They were growling and biting at him. Fourteen months prior to the dogs attacking Burns, they attacked and bit another dog, gripping it by its neck. This same dog was again attacked by one of Bodoh's Rottweilers a few months later. Both attacks were unprovoked. In February 1995 these Rottweilers chased a teenage boy as he was jogging. The dogs circled him and one bit at his pants leg. Additionally, several people testified that Bodoh's dogs acted in an aggressive manner if they walked by where the dogs were fenced in.

¶ 18. Other than structural modifications to the fence (which will be discussed in detail later), there was no evidence presented to show that Bodoh did anything to correct the aggressive behavior of his dogs. In fact, one of Bodoh's neighbors, also a dog trainer, testified that she once saw Bodoh beating one of his dogs. She confronted him about it. She testified that he was receptive to her criticism, and she did not see him repeat that behavior.

██

¶ 19. The jury convicted Bodoh of violating Wis. Stat. § 940.24. By so doing, the jury had to have found that Bodoh used or intended to use his dogs in a manner to cause death or great bodily harm. We determine that, given the evidence, this is a reasonable inference for the jury to draw.

¶ 20. We now turn to Bodoh's second argument: that he was not "handling" or "operating" his dogs at the time of the attack as those words are used in the statute. To satisfy the first element of Wis. Stat. § 940.24, we must also determine if Bodoh "operated" or "handled" the dogs as those words are used in the statute. Bodoh relies on dictionary definitions and

other sections of the criminal code to argue that a temporal or physical proximity is necessary to "operate" or "handle" a dangerous weapon. Because he was in Chicago at the time the dogs attacked the young boy, Bodoh argues that he could not have operated or handled his dogs. He also distinguishes *Sinks* because the defendant was physically present and personally ordered his dog to "guard" during the assault. Here, Bodoh was not present to give any commands to his dogs.

¶ 21. We agree with the court of appeals' analysis. First, the terms "operation" and "handling" are used in the statute in the disjunctive: a person may be guilty under Wis. Stat. § 940.24 "by the negligent operation *or* handling of a dangerous weapon. . . ." § 940.24 (emphasis added). In other words, a defendant may be guilty under the statute, assuming all the statutory elements of the crime are met, for either operating a dangerous weapon or for handling a dangerous weapon.

¶ 22. Like the court of appeals, we turn to the dictionary because neither "operation" nor "handling," as used in Wis. Stat. § 940.24, are defined in the statute. Dictionary definitions may be consulted to establish the common and approved usage of words used in a statute. *State v. Sample*, 215 Wis. 2d 487, 499, 573 N.W.2d 187 (1998) (citing Wis. Stat. § 990.01(1); *Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995)). The relevant definitions of "operate" include: "— intr. **1.** To perform a function; work. . .**3.a.** To exert an influence: *forces operating on the economy.* **b.** To produce a desired or proper effect: *a drug that operates quickly.. . .— tr.* **1.** To control the functioning of; run: *operate a sewing machine.. . .." The*

*American Heritage Dictionary of the English Language* at 1268 (3d ed. 1992). We agree with the court of appeals that given this dictionary definition, a person would normally have to be physically present to "operate" a dangerous weapon. *See Bodoh*, 220 Wis. 2d at 108. A person would have to be present to perform a function with a dog or to control the functioning of a dog.

¶ 23.   However, the same cannot be said for "handling" a dangerous weapon. Although the dictionary definition of "handle" includes "[t]o operate with the hands; manipulate," the dictionary also defines "handle" as "[t]o deal with or have responsibility for; conduct." *The American Heritage Dictionary of the English Language* at 819. A person need not be physically present to "handle" a dog as that term is used in the statute. Although Bodoh was not physically present when the dogs attacked and bit the young boy, we conclude that he did "handle" the dogs as that term is used in the statutes. There was ample testimony that Bodoh was responsible for supervising, directing, and controlling his dogs. We conclude that there is sufficient and credible evidence to support the jury's conclusion that Bodoh "handled" a dangerous weapon.

¶ 24.   Like the court of appeals, we caution that not all dogs are dangerous weapons.

> The statute requires that a person *use* or *intend to use* an object, animate or inanimate, as a dangerous weapon. Once that intent is expressed, there is a duty to operate or handle that dangerous weapon so as to avoid criminal liability. But a dog does not become a dangerous weapon unless the owner intends the dog to be used as such.

*Bodoh*, 220 Wis. 2d at 113. In other words, not all dog owners whose dogs bite another person can be subject to prosecution under Wis. Stat. § 940.24. It is only when there is sufficient evidence that the defendant intended to use his or her dog as a dangerous weapon that a person can be liable under § 940.24.

¶ 25. We now turn to Bodoh's third argument: he was not "criminally negligent" in the handling of his dogs as that phrase is used in the statute. Criminal negligence is defined as "ordinary negligence to a high degree, consisting of conduct which the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another." Wis. Stat. § 939.25(1).

¶ 26. To understand "criminal negligence" we must first define ordinary negligence.

> A person is negligent when he fails to exercise ordinary care. Ordinary care is the degree of care which the great mass of mankind ordinarily exercises under the same or similar circumstances. A person fails to exercise ordinary care when, without intending to do any harm, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject the person of another to an unreasonable risk of injury.

Wis JI—Criminal 1260 at 1–2 (footnote omitted). Criminal negligence differs from ordinary negligence in that criminal negligence requires serious harm, that is, death or great bodily injury, rather than just simple harm, and the risk of such harm must be unreasonable and substantial. *Id.* at 2. "Criminal negligence means the creation of a substantial and unreasonable risk of death or great bodily harm to another, of which the

actor should be aware." Judicial Council Committee Note—1987 S.B. 191 to Wis. Stat. § 939.25 (West 1996).

¶ 27. In a case challenging Wis. Stat. § 939.25, defining criminal negligence, and Wis. Stat. § 940.10, homicide by negligent operation of a vehicle, as unconstitutionally vague, the court of appeals determined that "the legislature has defined [']ordinary negligence to a high degree[' in § 939.25] to be conduct that unreasonably and substantially creates a risk of death or great bodily harm." *State v. Barman*, 183 Wis. 2d 180, 200, 515 N.W.2d 493 (Ct. App. 1994), review denied 520 N.W.2d 90. The court of appeals relied on its review of legislative history and determined that the statute was constitutional. *Id.* at 199–200. When § 939.25 was revised to its present form, the definition of criminal negligence was amended to refer to " '*substantial* and unreasonable risk of death or great bodily harm' " rather than " 'unreasonable risk and *high probability* of death or great bodily harm.' " *Id.* at 200 (emphasis supplied in *Barman*). An article regarding the statutory revision suggested that the amendment was not a substantive change but enacted to avoid the assumption that "high probability" referred to a statistical probability of more than 50 percent. *Id.* (referring to Walter Dickey et al., *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision*, 1989 Wis. L. Rev. 1323, 1374 n.177).

¶ 28. Having determined above that a dog can be a dangerous weapon and that there was sufficient evidence presented to the jury that Bodoh's Rottweiler dogs were dangerous weapons, and that he "handled" them, we must determine whether there is sufficient evidence to prove that he handled them in a criminally negligent manner. In other words, we must determine if there was sufficient and credible evidence for the jury

733

to conclude that Bodoh's actions or omission of a precaution unreasonably and substantially created a risk of death or great bodily harm.

¶ 29. There was considerable testimony that Bodoh's dogs were frequently loose and running at large in the community. At one time Bodoh received a citation for allowing his dogs to run at large. There was also testimony that months before the attack on Burns, Bodoh's dogs had twice attacked another dog and once attacked a child who was running by. There was testimony, not contradicted, that none of these attacks were provoked. The State's expert testified that a Rottweiler, especially one which has attacked before, is capable of causing death or great bodily harm. Also, although Bodoh never informed his veterinarian that his Rottweilers had this history of attacking, the veterinarian testified that if a dog owner informs him of such a dog, he suggests that the dog may have a tendency to be a biter and that the owner should keep the dog under observation and control.

¶ 30. Although Bodoh took steps to contain the dogs, the jury had to have determined that he omitted taking adequate steps to effectively contain his dogs given their nature and history of getting loose and attacking. There was testimony that Bodoh constructed a chain-link fence using metal stakes driven into the ground, placed a board around the bottom of the fence, and placed electric wire along the bottom of the fence. However, there was no evidence that the boards and electric wire around the bottom of the fence were in place the night Burns was attacked. There was evidence that the dogs went under the fence at one point and that the hole in the fence was there the night the dogs attacked Burns.

¶ 31. The State's expert, Ashford, testified that an untrained Rottweiler should be contained in a chain-link fence with a concrete base. She also stated that if a dog has a history of biting, there should be an inner fence with an outer fence. After being shown a picture of Bodoh's fence where the dogs apparently escaped, Ashford testified that it was her opinion that the fence was not adequate to contain the dogs.

¶ 32. There was also evidence that Bodoh chained the dogs with double choke collars, one to a tree and the other to a stake of the chain-link fence. However, Ashford testified that such collars were not sufficient to contain a Rottweiler, especially an agitated adult.

██

¶ 33. Given the apparent nature of the dogs and their history, as well as the size and power of Rottweiler dogs, there is sufficient and credible evidence in the record to support the jury's determination that a person of ordinary intelligence and prudence would reasonably foresee that failure to more adequately contain the dogs, especially when out of town, would subject other persons to an unreasonable and substantial risk of death or great bodily harm.

¶ 34. Bodoh relies on other statutes for his argument that he was not criminally negligent under Wis. Stat. § 940.24. Specifically, he relies on Wis. Stat. § 940.07 (reprinted below),[4] homicide resulting from

---

[4] Wisconsin Stat. § 940.07 provides:

**940.07 Homicide resulting from negligent control of vicious animal.** Whoever knowing the vicious propensities of any animal intentionally allows it to go at large or keeps it without ordinary care, if such animal, while so at large or not confined, kills any human being who has taken all the precautions which the circumstances may permit to avoid such animal, is guilty of a Class C felony.

negligent control of vicious animal. Bodoh argues that because there is no counterpart to § 940.07 relating to injury (rather than homicide) resulting from negligent control of a vicious animal, the legislature must have meant for such action to not be subject to criminal liability. Bodoh also relies on Wis. Stat. § 174.02 (reprinted in part below)[5] to argue that the legislature intended that there be only strict civil liability for injury caused by an animal. We disagree. There is absolutely no legislative history regarding § 940.07, or § 174.02 to support Bodoh's arguments. We cannot agree with Bodoh based only on his bare assertions.

¶ 35.   In sum, we hold that a dog can be a dangerous weapon if it is used or intended to be used in a manner calculated or likely to cause death or great bodily harm. We also agree with the court of appeals' interpretation of "handle" and hold that a dog owner can "handle" a dog in the manner by which he or she supervises, directs, and controls the dog. Our review of the record convinces us that there is sufficient and credible evidence to support the jury's verdict finding the defendant guilty of causing injury by negligent handling of a dangerous weapon.

¶ 36.   Bodoh raises one further objection: whether charging him with violating Wis. Stat. § 940.24 sub-

---

[5] Wisconsin Stat. § 174.02 provides in part:

174.02  **Owner's liability for damage caused by dog; penalties; court order to kill a dog. (1)** LIABILITY FOR INJURY. (a) *Without notice.* Subject to s. 895.045, the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property.

(b)  *After notice.* Subject to s. 895.045, the owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property.

jected him to selective prosecution in violation of his constitutional right to equal protection. Bodoh argues that he was the victim of selective prosecution because this is the first time this statute has been used to charge someone under these circumstances.

¶ 37. We decline to address this issue. Bodoh did not raise this issue in his petition for review. When this court grants a petition for review, "the petitioner cannot raise or argue issues not set forth in the petition unless ordered otherwise by the supreme court." Wis. Stat. § (Rule) 809.62(6). This court did not order Bodoh to address any issues not raised in his petition. His petition was granted only on the issues he raised which have been addressed above.

¶ 38. "It is the often-repeated rule in this State that issues not raised or considered in the trial court will not be considered for the first time on appeal." *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980) (citations omitted). An exception to this rule is usually made only when the new issue raised is a question of law, the parties have thoroughly briefed the issue, and there are no disputed issues of fact regarding the new issue. *Id.* at 444.

¶ 39. Because Bodoh failed to raise the issue of selective prosecution in his petition for review, we decline to address Bodoh's argument that he was subject to selective prosecution in violation of his constitutional right to equal protection.

*By the Court.*—The decision of the court of appeals is affirmed.