**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 12, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP350**

Cir. Ct. Nos. 2018TR1412
2018TR1413

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

WOOD COUNTY,

PLAINTIFF-APPELLANT,

V.

TREVOR J. KRIZAN,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Wood County: NICHOLAS J. BRAZEAU, JR., Judge. *Affirmed*.

¶1 KLOPPENBURG, J.[1] Wood County appeals the circuit court order granting Trevor Krizan's motion to suppress evidence obtained as a result of an

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

unlawful seizure in violation of the Fourth Amendment. The County argues that the court erred because there was no seizure implicating the protections of the Fourth Amendment. In the alternative, the County argues that, if a seizure occurred, the seizure was lawful because it was supported by reasonable suspicion or it was justified because the officer was exercising his duties as a community caretaker. I affirm for the reasons that follow.

## BACKGROUND

¶2 The following facts as adduced at the motion hearing are undisputed.

¶3 On April 26, 2018 at 1:59 a.m., while Wood County Sheriff's Deputy Nathan Dean was on patrol in the City of Nekoosa, he pulled into the parking lot at the Jim Freeman Memorial Boat Landing. The parking lot was open "24/7" to the public. The officer "spotlighted" the entire parking lot and was "surprised" when he noticed a vehicle parked in the lot. The vehicle was parked in a parking stall, close to a shed that obstructed the view of the parking lot from the roadway. The vehicle was not running, the lights were not on, and the hood was closed. The officer pulled behind the parked vehicle and activated his spotlight and "takedown lights" and saw two persons in the vehicle. The officer saw no indication that the persons were in distress. The officer then approached the vehicle on the driver's side and made contact with the two adults inside the vehicle. Before he spoke to the persons in the vehicle, the officer did not observe either the vehicle or the persons inside the vehicle doing anything illegal. The officer testified that "after I obtained their identification, spoke with them, got a reasoning for why they were there, in speaking with Trevor during the contact I observed him to have glassy eyes and he slurred his speech a couple times throughout my conversation with him."

2

¶4      The County cited Krizan for operating while under the influence and for operating with a prohibited alcohol content as a first offense. Krizan moved to suppress the evidence obtained by the arresting officer. The circuit court granted the motion. The County appeals.

## DISCUSSION

¶5      The County raises three issues on appeal: (1) whether there was a seizure implicating the protections of the Fourth Amendment; (2) if so, (a) whether the seizure was supported by reasonable suspicion, or (b) whether the seizure was justified by the exercise of the community caretaker function. I first state the standard of review and then address each issue in turn.

### A. Standard of Review

¶6      "Whether evidence should be suppressed is a question of constitutional fact. In reviewing questions of constitutional fact, [this court] will uphold a circuit court's factual findings unless they are clearly erroneous, but [this court] will independently decide whether those facts meet the constitutional standard." *State v. Truax*, 2009 WI App 60, ¶8, 318 Wis. 2d 113, 767 N.W.2d 369 (citations omitted).

### B. Seizure

¶7      The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect an individual's right to be free from unreasonable searches and seizures. *State v. Young*, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729. However, not every encounter between police and a private citizen is a seizure subject to the prohibition of the Fourth Amendment. *Id.* at ¶23. A police-citizen encounter becomes a seizure when the

law enforcement officer "'by means of physical force or show of authority'" in some way restrains the liberty of the citizen. *United States v. Mendenhall*, 446 U.S. 544, 552 (1980) (quoted source omitted). A seizure will generally occur when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Young*, 294 Wis. 2d 1, ¶3 (quoting *Mendenhall*, 446 U.S. at 554 (1980)).

¶8 On appeal, the County argues that no seizure of Krizan occurred when the officer pulled up behind Krizan's vehicle that was parked and turned off in an open parking lot, activated his spotlight and takedown lights, saw two persons in the vehicle, exited his squad car, approached the vehicle, and made contact with the persons inside the vehicle. However, the County does not point to any argument it made before the circuit court that a seizure did not occur under these circumstances, and my review of the record reveals none. Rather, the County's argument at the motion hearing was expressly premised on the officer's exercise of the community caretaker function. And, as explained below, the first element of the community caretaker test is "that a seizure within the meaning of the fourth amendment has occurred." *Truax*, 318 Wis. 2d 113, ¶10 (quoted source omitted). Thus, the County's argument in the circuit court assumed that a seizure under the circumstances in this case occurred.

¶9 Courts generally do not consider issues raised for the first time on appeal. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. "A fundamental appellate precept is that we 'will not … blindside [circuit] courts with reversals based on theories which did not originate in their forum.'" *Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶11, 261 Wis. 2d 769, 661 N.W.2d 476 (quoting *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995)); *see also Townsend v. Massey*, 2011 WI App 160, ¶25, 338 Wis. 2d

114, 808 N.W.2d 155 ("[T]he forfeiture rule focuses on whether particular arguments have been preserved, not on whether general issues were raised before the circuit court."); *State v. Eugene W.*, 2002 WI App 54, ¶13, 251 Wis. 2d 259, 641 N.W.2d 467 (To preserve an issue for appeal, a party must raise it "with sufficient prominence such that the [circuit] court understands that it is called upon to make a ruling."). Moreover, because consideration of whether a seizure occurred depends in part on findings of fact (including here, the extent to which Krizan's vehicle could leave in light of the officer's placement of his squad car behind Krizan's vehicle), this court is not equipped to deal with the issue in this appeal. *See State v. Bodoh*, 226 Wis. 2d 718, 737, 595 N.W.2d 330 (1999) (appellate courts may address issue not considered below "only when the new issue raised is a question of law … and there are no disputed issues of fact regarding the new issue").

¶10 Accordingly, I conclude that the County has both forfeited its right to raise, and effectively conceded, this argument on appeal.

## C. Reasonable Suspicion

¶11 An investigative stop is a seizure within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution. *State v. Harris*, 206 Wis. 2d 243, 258-59, 557 N.W.2d 245 (1996). To execute a valid investigative stop, a law enforcement officer must have reasonable suspicion to believe that a crime has been, is being, or will be committed. *Young*, 294 Wis. 2d 1, ¶20. Reasonable suspicion requires that the officer possess specific and articulable facts, not merely a hunch, that warrant a reasonable belief that criminal activity is afoot. *Id.* at ¶21. We examine the facts leading up to the stop to determine whether those facts, viewed from the

standpoint of an objectively reasonable police officer, amount to reasonable suspicion. *Id.* at ¶58.

¶12 In its appellant's brief, the County does not argue that reasonable suspicion supported the officer's investigative stop. Instead, the County states twice that the officer "may not have had a reasonable suspicion that a crime was being committed, had been committed or was about to be committed" at the time the officer "made his initial contact with Krizan," and that, because of the officer's exercise of the community caretaker function, no reasonable suspicion needed to be shown. It is only in the County's reply brief that it argues for the first time that reasonable suspicion supported the officer's investigative stop of Krizan.

¶13 Significantly, Krizan argued in the circuit court the absence of reasonable suspicion, and the circuit court found that "when the officer comes in and he sees the car and … pulls in, nothing illegal is happening, so there … is no reasonable suspicion for anything because everyone here agrees that there's nothing going on." The County responded that the officer did not need to have reasonable suspicion because of the officer's exercise of the community caretaker function. The County failed to argue the existence of reasonable suspicion before the circuit court, and by effectively conceding the issue both before the circuit court and in its appellant's brief, the County has forfeited the issue.

### D. Community Caretaker

¶14 An investigative stop that is not supported by reasonable suspicion may nonetheless be justified as an exercise of the officer's duties as a community caretaker. *State v. Maddix*, 2013 WI App 64, ¶14, 348 Wis. 2d 179, 831 N.W.2d 778; *Kramer*, 315 Wis. 2d 414, ¶17.

¶15    "Wisconsin courts use a three-part test to determine whether an officer's conduct properly falls within the scope of the community caretaker exception." *Maddix*, 348 Wis. 2d 179, ¶16.  The court must determine:

> (1) that a seizure within the meaning of the fourth amendment has occurred; (2) if so, whether the police conduct was bona fide community caretaker activity; and (3) if so, whether the public need and interest outweigh the intrusion upon the privacy of the individual.

*Kramer*, 315 Wis. 2d 414, ¶21 (quoted source and footnote omitted).  The State has the burden of proving that an officer's conduct falls within the scope of the community caretaker function.  *Id.* at ¶17.

¶16    As explained above, the County has both forfeited and effectively conceded the first element, that Krizan was seized when the officer pulled up behind Krizan's vehicle.  Accordingly, I continue to the second element.

¶17    The second element is whether the officer was engaged in a bona fide community caretaker function.  "This requires [the court] to determine whether there is an objectively reasonable basis to believe [that] there is a member of the public who is in need of assistance." *Maddix*, 348 Wis. 2d 179, ¶20 (internal citations and quoted sources omitted).  In making this determination, this court examines the totality of the circumstances. *Id.*

¶18    Here, the circuit court first found that the officer did nothing "wrong" when he drove through the parking lot to make sure nothing was "going on."  The court went on to find that when the officer discovered Krizan's car, and then pulled up behind Krizan's car and turned on his lights, the officer saw "two people are sitting in the car … not doing anything to each other … [not] appear[ing] to be in any distress."  At that point, the court determined that the

7

County had proven no facts that would support the exercise of the community caretaker function and justify the stop of Krizan.

¶19 The County does not argue that any of the circuit court's factual findings are clearly erroneous. Instead, the County points to the officer's testimony as to what the officer was considering when he saw the vehicle in the parking lot, including the possibility that the driver could be lost or tired. However, the test requires "an objectively reasonable basis" to believe a member of the public is in need of assistance, and the County does not explain how the circumstances here, in light of the court's findings, establish an objective basis to believe that the occupants of Krizan's vehicle were in need of assistance.

¶20 In support of its community caretaker argument, the County argues that this case is analogous to *Truax*, 318 Wis. 2d 113, but the County's attempted analogy fails. In *Truax*, the officer testified that at approximately 12:30 a.m. as a vehicle passed him, he saw the vehicle abruptly pull off to the shoulder of the roadway and he did not see any person exit the vehicle thereafter. *Id.* at ¶¶2-4. The officer testified that he was "concerned for the well-being of the driver inside at that time," thinking that the driver may be lost, using a cell phone, experiencing a medical condition, or encountering a mechanical problem. *Id.* at ¶¶4-5, 16. Here, to the contrary, when the officer saw Krizan's vehicle, the vehicle had not just abruptly pulled off to the side of a road, but was properly parked in a parking stall in an open, public parking lot. Krizan's vehicle was not running, and there were no signs of mechanical or other issues, nor were there any signs of distress regarding the two people the officer saw sitting in the vehicle. The circumstances in *Truax* that established an objective basis to believe one or more of the vehicle's occupants were in need of assistance—the vehicle's "abrupt exit from the roadway," *id.* at ¶4—did not exist here.

8

¶21     In sum, the County fails to establish the second element, the officer's engagement in a bona fide community caretaker function, given the circumstances as found by the circuit court here.

¶22     Because the County fails to establish the second element of the community caretaker test, I need not and do not address the third element.

## CONCLUSION

¶23     For all of the reasons stated above, the County's appeal fails and, therefore, I affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.